UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Edan Moshe,<br><br>                                    Plaintiff,<br><br>-against-<br><br>American Express National Bank; Citibank, N.A.; Oxygen XL; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC,<br><br>                                    Defendants. | Civil Action<br>Case No.: 1:26-cv-03646<br><br><br>**COMPLAINT** |

Plaintiff Edan Moshe ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against the defendants named herein, hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.     Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), American Express National Bank ("AMEX"), Citibank, N.A. ("Citibank"), and Oxygen XL ("Oxygen XL") (collectively, the "Furnishers"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## PARTIES

2.     Plaintiff is an individual resident of the State of New York, residing in Kings County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. AMEX is a national banking association and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

4. Oxygen XL is a limited liability company organized and existing under the laws of the State of New Jersey and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

5. Citibank is a national banking association and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

6. TransUnion is a Delaware limited liability company, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

7. Experian is an Ohio corporation, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

8. Equifax is a Georgia limited liability company, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

### JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff.

**STATEMENT OF FACTS**

11. Plaintiff is a victim of identity theft.

12. After Plaintiff's wallet was lost or stolen, an unauthorized credit card account was opened in Plaintiff's name without his knowledge or authorization.

13. Plaintiff thereafter discovered that fraudulent account, together with several of his own accounts being reported inaccurately, appearing on his consumer reports.

14. On or about April 6, 2026, Plaintiff obtained a credit report, as reported by the CRAs, that reflected three (3) accounts at issue:

   a) AMEX (Account No. 3499XXXX) ("AMEX Account");

   b) Oxygen XL (Account No. 11137) ("Oxygen XL");

   c) Citibank (Account No. 6035XXXX) ("Citibank Account")

(collectively, the "Accounts").

15. Plaintiff did not apply for, authorize, open, or otherwise incur the AMEX Account, which is the product of identity theft.

16. The AMEX Account was reported with a balance of $1,440.00 in derogatory status, as reported by Equifax, Experian, and TransUnion.

17. The Oxygen XL Account was reported with a balance of $7,298.00 in derogatory status, as reported by Experian.

18. The Citibank Account was reported with a balance of $0.00 in derogatory status, as reported by Equifax, Experian, and TransUnion.

19. On or about April 6, 2026, Plaintiff filed an FTC Identity Theft Report, Report No. 199899392, identifying the fraudulent AMEX Account opened in Plaintiff's name.

4

20.     On or about April 23, 2026, Plaintiff submitted a comprehensive written dispute package to each of the CRAs.

21.     The dispute package included a formal dispute letter, proof of identity, FTC Identity Theft Report No. 199899392, and supporting documentation identifying the inaccurate and fraudulent information concerning the Accounts and demanding their correction or removal from Plaintiff's consumer reports.

22.     Upon receipt of Plaintiff's dispute, pursuant to 15 U.S.C. § 1681i(a)(2), the CRAs were obligated to notify each furnisher that had furnished the disputed information of Plaintiff's notice of dispute.

23.     Upon receipt of Plaintiff's dispute sent from the CRAs, the Furnishers were required to conduct a reasonable investigation pertaining to the disputed information and to report their results to the CRAs, pursuant to 15 U.S.C. § 1681s-2(b).

24.     On or about June 11, 2026, Plaintiff obtained a post-dispute credit report reflecting that the Accounts continued to appear on Plaintiff's consumer reports in derogatory status.

25.     The Furnishers failed to conduct a reasonable investigation of the disputed information, failed to correct or delete the inaccurate and fraudulent information, and continued to furnish derogatory information concerning the Accounts to the CRAs after receiving notice of Plaintiff's dispute.

26.     The CRAs likewise failed to conduct a reasonable reinvestigation of Plaintiff's dispute, failed to review all relevant information submitted by Plaintiff, and failed to delete or correct the inaccurate information concerning the Accounts.

27.     The Accounts were reported inconsistently across the bureaus, with the AMEX Account and the Citibank Account appearing on the Equifax, Experian, and TransUnion reports,

and the Oxygen XL Account appearing only on the Experian report, evidencing the CRAs' failure to conduct a reasonable reinvestigation.

28.    As a direct and proximate result of the pre-existing inaccurate and fraudulent reporting of the Accounts, Plaintiff was repeatedly denied credit, as documented by a series of adverse action notices.

29.    On or about April 20, 2026, WebBank, c/o Prosper Marketplace, Inc., declined Plaintiff's loan application based on information obtained from Plaintiff's TransUnion consumer report, and citing "serious delinquency" and that the "proportion of balances to credit limits is too high on bank revolving or other revolving accounts."

30.    On or about April 20, 2026, Upgrade, Inc., in connection with a loan rate request submitted through its partner, advised Plaintiff that it "could not provide a rate quote for you at this time."

31.    On or about April 22, 2026, FinWise Bank, c/o LendingPoint LLC, in connection with a request submitted through Credit Karma, advised Plaintiff it "cannot grant a loan to you at this time," based on information obtained from Plaintiff's Experian consumer report, which reflected a FICO score of 577.

32.    On or about May 26, 2026, Upgrade, Inc., in connection with a rate request through Experian, advised Plaintiff it "could not provide a rate quote for you at this time."

33.    On or about May 30, 2026 (Quote No. 568571D5359266), and again on or about June 1, 2026 (Quote No. 568641N0535880), GEICO advised Plaintiff he "received a higher price based on your credit information," based on information obtained from Plaintiff's TransUnion consumer report, citing "1 or more accounts 90+ days past due and 1 or more credit cards 60+ days past due."

6

34.     The April 20, 2026 (Prosper and Upgrade) and April 22, 2026, adverse actions resulted from the pre-existing inaccurate and fraudulent reporting of the Accounts.

35.     The May 26, 2026, May 30, 2026, and June 1, 2026, adverse actions occurred after the CRAs and Furnishers received notice of Plaintiff's dispute, while they continued to report the Accounts, demonstrating the continuing nature of the harm.

36.     Each of the foregoing adverse actions was based in whole or in part on information obtained from Plaintiff's consumer reports, which contained the inaccurate and fraudulent Accounts.

37.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered significant emotional distress, including stress, anxiety, depression, sleep issues, fear, worry, anger, frustration, and physical symptoms, as well as damage to Plaintiff's creditworthiness and financial reputation.

38.     Plaintiff has additionally invested more than twenty hours of personal time addressing the fraudulent and inaccurate Accounts and pursuing their correction, a harm that continues to affect Plaintiff to this day.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA *Against The Furnishers*
### (Violations of 15 U.S.C. § 1681s-2(b))

39.     Plaintiff incorporates by reference each of the preceding paragraphs.

40.     The Furnishers are each a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

41.     The Furnishers received notice of Plaintiff's dispute from the CRAs.

7

42. The Furnishers provided information relating to Plaintiff to the CRAs that they knew or had reasonable cause to believe was inaccurate.

43. With respect to American Express, the AMEX Account was reported in derogatory charge-off status on Plaintiff's Equifax, Experian, and TransUnion consumer reports, with a balance of $1,440.00 on Experian and TransUnion; following Plaintiff's dispute, Equifax reduced the reported balance to $0.00 but continued to report the account as a derogatory charge-off. This account was opened without Plaintiff's knowledge, consent, or authorization, and constitutes a fraudulent account resulting from identity theft, as documented by FTC Identity Theft Report No. 199899392. Despite receiving notice of Plaintiff's dispute, AMEX continued to furnish derogatory information concerning the account to the CRAs without correction or deletion.

44. With respect to Oxygen XL, the Oxygen XL Account was reported with a balance of $7,298.00 in derogatory status on Plaintiff's Experian consumer report. Despite receiving notice of Plaintiff's dispute, Oxygen XL failed to investigate and continued to furnish derogatory information concerning the account to the CRAs without correction or deletion.

45. With respect to Citibank, the Citibank Account was reported in derogatory status on Plaintiff's Equifax, Experian, and TransUnion consumer reports. Despite receiving notice of Plaintiff's dispute, Citibank failed to investigate and continued to furnish derogatory information concerning the account to the CRAs without correction or deletion.

46. After receiving notice of Plaintiff's dispute from the CRAs, the Furnishers continued to furnish information concerning the Accounts to the CRAs without correction or deletion, despite knowing or having reasonable cause to believe that such reporting was inaccurate.

47. The Furnishers' conduct was willful.

8

48. The Furnishers acted with knowledge of their obligations under the FCRA and with reckless disregard for Plaintiff's rights and the accuracy of the information reported.

49. This willfulness is evidenced by the Furnishers' failure to respond meaningfully to Plaintiff's dispute, their failure to produce documentation supporting the disputed Accounts, and their continued reporting of the inaccurate information despite clear notice of Plaintiff's dispute and of the identity theft underlying the fraudulent AMEX Account. The post-dispute consumer report dated June 11, 2026, reflects that the AMEX Account and the Oxygen XL Account were annotated "Item disputed by consumer," yet each continued to be furnished in derogatory status without correction or deletion.

### COUNT II: Negligent Noncompliance With The FCRA *Against The Furnishers*
### (Violations of 15 U.S.C. § 1681s-2(b))

50. Plaintiff incorporates by reference each of the preceding paragraphs.

51. The Furnishers' conduct constituted negligent noncompliance as furnishers of information, thereby violating their duties under 15 U.S.C. § 1681s-2(b).

52. The Furnishers failed to exercise reasonable care in their information furnishing practices and in their investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching their duties owed to Plaintiff under the FCRA.

### COUNT III: Willful Noncompliance With The FCRA *Against The CRAs*
### (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)

53. Plaintiff incorporates by reference each of the preceding paragraphs.

54. The CRAs are each a "consumer reporting agency" as defined by and subject to the FCRA, 15 U.S.C. § 1681a(f).

55. The CRAs received a dispute from Plaintiff concerning the inaccurate information related to the Accounts appearing on Plaintiff's consumer report.

56.     Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

57.     The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute.

58.     The CRAs failed to review all relevant information submitted by Plaintiff.

59.     The CRAs failed to delete or correct the inaccurate information, or to accurately record the status of the disputed information concerning the Accounts.

60.     The Accounts continued to be reported inconsistently across the bureaus following Plaintiff's comprehensive dispute, with the AMEX Account and the Citibank Account appearing on the Equifax, Experian, and TransUnion reports, and the Oxygen XL Account appearing only on the Experian report, evidencing the failure of each to conduct a reasonable reinvestigation.

61.     The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's comprehensive dispute and accompanying documentation was willful.

62.     The CRAs acted with knowledge of their statutory duties or in reckless disregard of those duties and Plaintiff's rights.

**COUNT IV: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

63.     Plaintiff incorporates by reference each of the preceding paragraphs.

64.     The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

65.     The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the Accounts.

**COUNT V: Willful Noncompliance With The FCRA *Against The CRAs***

**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

66. Plaintiff incorporates by reference each of the preceding paragraphs.

67. Pursuant to 15 U.S.C. § 1681e(b), CRAs must follow reasonable procedures to assure maximum possible accuracy of the information in their reports.

68. The CRAs failed to follow reasonable procedures to ensure maximum possible accuracy of the information concerning Plaintiff.

69. The continued reporting of the inaccurate and fraudulent Accounts on Plaintiff's consumer reports, even after Plaintiff's comprehensive dispute package including FTC Identity Theft Report No. 199899392, together with the inconsistent reporting of the Accounts across Equifax, Experian, and TransUnion, demonstrates the CRAs' failure to adhere to this statutory mandate.

70. The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about Plaintiff.

**COUNT VI: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

71. Plaintiff incorporates by reference each of the preceding paragraphs.

72. The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

73. The CRAs failed to exercise reasonable care in their consumer report preparation and accuracy assurance processes.

**COUNT VII: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

74. Plaintiff incorporates by reference each of the preceding paragraphs.

75. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) the identification of such information by the consumer; and (3) a statement by the consumer that the information does not relate to any transaction by the consumer.

76. Plaintiff provided the CRAs with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) via his dispute submission transmitted on April 23, 2026, including appropriate proof of identity, FTC Identity Theft Report No. 199899392 identifying the AMEX Account as a fraudulent account resulting from identity theft, and a statement that the AMEX Account does not relate to any transaction by Plaintiff.

77. The CRAs willfully failed to timely block the reporting of the AMEX Account within four business days of their receipt of Plaintiff's complete request and documentation.

78. Alternatively, if the CRAs did implement a block, they impermissibly and willfully rescinded such block without proper notification to Plaintiff or a valid basis, as the AMEX Account continued to appear on Plaintiff's consumer reports.

79. The CRAs' failure to block, or their improper rescission of a block, was willful, demonstrating a knowing or reckless disregard for their obligations under 15 U.S.C. § 1681c-2.

**COUNT VIII: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

80. Plaintiff incorporates by reference each of the preceding paragraphs.

12

81. The CRAs' conduct constituted negligent noncompliance with their duties to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

82. The CRAs failed to exercise reasonable care in implementing or maintaining the required block on information related to the AMEX Account.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against the defendants, jointly and severally where appropriate, for the following:

I. Actual damages in an amount to be fully determined at trial, including but not limited to compensation for credit denials, damage to creditworthiness and reputation, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

II. Statutory damages, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for the willful and reckless violations of the FCRA;

IV. Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
June 17, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Edan Moshe

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com

13